1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   JAMISI JERMAINE CALLOWAY,            CASE NO. 1:11-cv-00803 DLB PC

10                      Plaintiff,
                                         ORDER DISMISSING COMPLAINT WITH
11         v.                            LEAVE TO FILE FIRST AMENDED
                                         COMPLAINT
12   A. K. SCRIBNER, et al.,
                                         (Doc. 1)
13
                                         FIRST AMENDED COMPLAINT DUE IN
14                      Defendants.      THIRTY DAYS
                                    /
15

16                          **Screening Order**

17   **I.      Screening Requirement**

18         Plaintiff Jamisi Jermaine Calloway ("Plaintiff"), a state prisoner proceeding pro se and in

19   forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 17, 2011.

20         The Court is required to screen complaints brought by prisoners seeking relief against a

21   governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

22   Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

23   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

24   monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

25   "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

26   dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

27   claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

28

1

1   A complaint must contain "a short and plain statement of the claim showing that the pleader
2   is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but
3   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
4   do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v.
5   Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient
6   factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at
7   1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal
8   conclusions are not. Id. at 1949.

9   **II.    Summary of Plaintiff's Complaint**

10   Plaintiff is an African American prisoner in the custody of the California Department of
11   Corrections and Rehabilitation ("CDCR"). He is housed at Kern Valley State Prison in Delano,
12   California. The events giving rise to the claims at issue in this action allegedly occurred while
13   Plaintiff was housed at the California Substance Abuse Treatment Facility ("CSATF") at Corcoran
14   State Prison ("CSP"). Plaintiff names A. K. Scribner, CSATF Warden; CDCR Chief Medical
15   Officer; Unknown Medical Care Providers; D. G. Adams, CSP Warden; CDCR; Gambro Healthcare-
16   Davita Hemodialysis Clinic ("Gambro Clinic"); Richard Turner, Gambro Clinic CEO; Jenny Porter,
17   Gambro Clinic Regional Director; and Doctor Chen, Gambro Clinic Nephrologist. Plaintiff seeks
18   money damages and injunctive relief.

19   Plaintiff alleges the following: Prior to 2002, Plaintiff was diagnosed with end stage renal
20   failure. He requires five hours of hemodialysis (dialysis) three days per week. Compl. p. 9:14-17.
21   On or about August 14, 2001, Plaintiff was transferred from San Quentin State Prison to CSATF for
22   hemodialysis and care. Compl. pp. 10:25-11:4. From August 14, 2001 to December 6, 2002,
23   CDCR, CSATF, and Warden Scribner took no actions to arrange for hemodialysis treatment,
24   adequate medications on time or an adequate renal diet. CDCR and CSATF also took no action for
25   Plaintiff to receive "a permanent access" and removal of a temporary shunt. On December 6, 2002,
26   Plaintiff was transferred from CSATF to CSP for hemodialysis treatment. As CSP was unable to
27   provide hemodialysis treatment, medication or medical attention, Plaintiff was sent to Gambro
28   Clinic for treatment. Dr. Chen, nephrologist at Gambro Clinic, never referred Plaintiff for a

1   transplant or for "permanent access" and removal of the temporary shunt.

2        Plaintiff alleges that while he was being treated from December 2002 to April 2006, none

3   of the defendants, including the CEO and Regional Director of the Gambro Clinic, arranged for a

4   kidney transplant evaluation, adequate dialysis, adequate medications, adequate renal diet, "a

5   permanent access" and removal of a temporary shunt.

6        Plaintiff also alleges that at some point, state correctional officers damaged his access graft,

7   which significantly impaired its functioning, by cuffing him behind the back.  For several months,

8   his blood could not be adequately cleansed in a normal dialysis session.  He suffered frequent bouts

9   of fever, chills, nausea, vomiting, diarrhea, and lethargy because the toxins could not be filtered

10  through the temporary shunt.  Compl. p. 16:1-18.  At some point in 2002, the damaged shunt was

11  "snatch[ed] out in a cell fight with another inmate."  Plaintiff was sent for another shunt instead of

12  having a permanent access place under the skin in his arm or leg.  After being denied a permanent

13  access, Plaintiff was sent back to prison without any dialysis until he became very ill.  Subsequently,

14  Plaintiff required a new access shunt to be placed in his chest.  Compl. pp. 16:26-17:9.

15       At some point in 2002, Plaintiff advised Dr. Chen that he needed a permanent access.

16  Defendants Dr. Chen, Richard Turner and Jenny Porter did not arrange for Plaintiff to have a new

17  permanent access or a kidney transplant evaluation.  Compl. p. 17:10-27.

18       At some time, Plaintiff became ill and was admitted to Doctor's Medical Center with a high

19  fever, chills, nausea, vomiting and an infection in his chest access shunt.  He remained hospitalized

20  for four days.   At some other point, he was hospitalized again at Doctor's Medical Center with

21  hyperkalemia, hypertension, and an abnormal electrocardiogram.  He was provided emergency

22  dialysis and had surgery to implant a new shunt access in his chest.  He remained hospitalized for

23  twelve days.  Compl. p. 18:1-11.  At another point, he was hospitalized at the Mt. Diablo Medical

24  Center after arriving via ambulance in a "delirious and disoriented state," with a fever, sepsis and

25  a grossly infected access shunt with abscess formations.  He received emergency dialysis, treatment

26  for his infection and surgical resection of the infected shunt access.  He remained hospitalized for

27  fourteen days.  Compl. p. 18:12-20.

28       Plaintiff alleges that he was hospitalized several times while in custody between December

1   6, 2002 to April 2007 for infections to his shunt.  Between April 2006 and July 2007, Plaintiff was

2   transferred to the California Medical Facility for hemodialysis and adequate medical care.  He was

3   hospitalized again for an infected shunt access in his chest and referred for a permanent access in his

4   left upper arm and a temporary shunt replaced on his chest.  He was denied a permanent access and

5   a kidney referral transplant evaluation.  Compl. pp. 18:23-19:12.  Plaintiff alleges that between

6   August 14, 2001 and 2006, Defendants CDCR, Scribner, Adams, Gambro Clinic, Richard Turner,

7   Jenny Porter and Dr. Chen deliberately neglected his serious medical needs.  Compl. p. 19:12-21.

8         Plaintiff asserts causes of action for violations of the Eighth Amendment, the Americans with

9   Disabilities Act and Section 504 of the Rehabilitation Act.

10  **III.   Discussion**

11        The Civil Rights Act under which this action was filed provides:

12              Every person who, under color of [state law] . . . subjects, or causes
                to be subjected, any citizen of the United States . . . to the deprivation
13              of any rights, privileges, or immunities secured by the Constitution .
                . . shall be liable to the party injured in an action at law, suit in equity,
14              or other proper proceeding for redress.

15  42 U.S.C. § 1983.  "Section 1983 . . .  creates a cause of action for violations of the federal

16  Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)

17  (internal quotations omitted).  "To the extent that the violation of a state law amounts to the

18  deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution,

19  Section 1983 offers no redress."  Id.

20        **1.      Deficiencies of the Complaint**

21            **A.      Rule 8(a)**

22        Under federal pleading requirements, a complaint must contain "a short and plain statement

23  of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed

24  factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action,

25  supported by mere conclusory statements, do not suffice," Iqbal, 129 S.Ct. at 1949 (citing Twombly,

26  550 U.S. at 555, 127 S.Ct. at 1955), and courts "are not required to indulge unwarranted inferences,"

27  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and

28  citation omitted).  Factual allegations are accepted as true but legal conclusions are not, and Plaintiff

1   is required to present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129

2   S.Ct at 1949-50; Moss. v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere

3   possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 129 S.Ct at 1949.

4   Plaintiff's complaint consists of more than twenty-five handwritten pages and fails to comply

5   with Rule 8(a)'s requirement that the complaint contain "a short and plain statement of the claim

6   showing that the pleader is entitled to relief."  Plaintiff's repetitive narrative does not clearly or

7   succinctly allege facts against the named defendants.  Although Plaintiff provides a range of dates

8   in which a number of incidents took place, he does not identify any specific conduct by the named

9   defendants.  Rather, Plaintiff states legal conclusions.

10                          **B.       Eleventh Amendment Immunity**

11   Plaintiff names CDCR as a defendant.  Plaintiff may not sustain an action against a state

12   agency.  The Eleventh Amendment prohibits federal courts from hearing suits brought against an

13   unconsenting state.  Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th

14   Cir.1991) (citation omitted); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Puerto Rico

15   Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins.

16   Sys., 939 F.2d 676, 677 (9th Cir.1991). The Eleventh Amendment bars suits against state agencies

17   as well as those where the state itself is named as a defendant. See Natural Resources Defense

18   Council v. California Dep't of Transp., 96 F.3d 420, 421 (9th Cir.1996); Brook, 951 F.2d at 1053;

19   Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) (concluding that Nevada Department of Prisons

20   was a state agency entitled to Eleventh Amendment immunity); Mitchell v. Los Angeles Community

21   College Dist., 861 F.2d 198, 201 (9th Cir.1989).  CDCR is a state agency and it is entitled to

22   Eleventh Amendment immunity from suit.

23                          **C.       Supervisory Liability**

24   Plaintiff appears to attribute supervisory liability to Warden Scribner, Warden Adams and

25   the CDCR Chief Medical Officer.  Plaintiff fails to state a cognizable claim against them for

26   supervisory liability.  The term "supervisory liability," loosely and commonly used by both courts

27   and litigants alike, is a misnomer.  Iqbal, 129 S. Ct. at 1949.  "Government officials may not be held

28   liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."

1   Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or

2   her own misconduct.

3       When the named defendant holds a supervisory position, the causal link between the

4   defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley,

5   607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state

6   a claim for relief under § 1983 for supervisory liability, plaintiff must allege some facts indicating

7   that the defendant either: personally participated in the alleged deprivation of constitutional rights;

8   knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy

9   so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force

10  of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal

11  citations omitted); Taylor, 880 F.2d at 1045. Plaintiff alleges no facts to demonstrate that Warden

12  Scribner, Warden Adams or the CDCR Chief Medical Officer personally deprived Plaintiff of his

13  constitutional rights, knew of constitutional violations and failed to act, or promulgated a policy that

14  violated Plaintiff's constitutional rights.

15                **D.      Private Parties**

16      Plaintiff names private parties Gambro Clinic, Gambro Clinic President Richard Turner,

17  Gambro Clinic Regional Director Jenny Porter and Gambro Clinic Nephrologist Dr. Chen as

18  Defendants. To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted

19  under color of state law and (2) the defendant deprived him of rights secured by the Constitution or

20  federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Generally,

21  private parties are not acting under color of state law. Brentwood Academy v. Tennessee Secondary

22  School Athletic Assoc., 531 U.S. 288, 295, 121 S.Ct. 924, 930 (2001); Single Moms, Inc. v.

23  Montana Power Co., 331 F.3d 743, 746-47 (9th Cir. 2003); Sutton v. Providence St. Joseph Med.

24  Ctr., 192 F.3d 826, 835 (9th Cir. 1999); Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991).

25                **2.      Legal Standards**

26      In the paragraphs that follow, the court will provide Plaintiff with the legal standards that

27  appear to apply to his claims. Plaintiff should carefully review the standards and amend only those

28  claims that he believes, in good faith, are cognizable.

1              **A.     Eighth Amendment**

2           "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

3    must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096

4    (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)).  The two part

5    test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by

6    demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or

7    the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was

8    deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059

9    (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th

10   Cir. 1997) (en banc) (internal quotations omitted)).   Deliberate indifference is shown by "a

11   purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused

12   by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  In order to state a claim for violation

13   of the Eighth Amendment, Plaintiff must allege sufficient facts to support a claim that the named

14   defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer v.

15   Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

16          In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's

17   civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere

18   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

19   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at

20   105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical

21   condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

22   Medical malpractice does not become a constitutional violation merely because the victim is a

23   prisoner." Estelle, 429 U.S. at 106.  Even gross negligence is insufficient to establish deliberate

24   indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

25   1990).

26          Also, "[a] difference of opinion between a prisoner-patient and prison medical authorities

27   regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344

28   (9th Cir. 1981) (internal citation omitted).  To prevail, Plaintiff "must show that the course of

1   treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that

2   they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v.

3   McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).   A prisoner's mere

4   disagreement with diagnosis or treatment does not support a claim of deliberate indifference.

5   Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

6           In his complaint, Plaintiff does not state a cognizable claim against any of the named

7   defendants.   Plaintiff fails to include specific factual allegations, as opposed to legal conclusions,

8   showing that any defendant knew of and disregarded an excessive risk to Plaintiff's health or that

9   the course of treatment given to him was medically unacceptable under the circumstances.

10                  **B.        Americans with Disabilities Act and § 504 of the Rehabilitation Act**

11          Plaintiff alleges a violation of the Americans with Disabilities Act and § 504 of the

12  Rehabilitation Act. Title II of the Americans with Disabilities Act (ADA) and § 504 of the

13  Rehabilitation Act (RA) "both prohibit discrimination on the basis of disability." Lovell v. Chandler,

14  303 F.3d 1039, 1052 (9th Cir.2002). Title II of the ADA provides that "no qualified individual with

15  a disability shall, by reason of such disability, be excluded from participation in or be denied the

16  benefits of the services, programs, or activities of a public entity, or be subject to discrimination by

17  such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "no otherwise qualified

18  individual with a disability ... shall, solely by reason of her or his disability, be excluded from the

19  participation in, be denied the benefits of, or be subjected to discrimination under any program or

20  activity receiving Federal financial assistance...." 29 U.S.C. § 794. Title II of the ADA and the RA

21  apply to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206,

22  210, 118 S.Ct. 1952, 1955, 141 L.Ed.2d 215 (1998); see also Armstrong v. Wilson, 124 F.3d 1019,

23  1023 (9th Cir.1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir.1996).

24          "To establish a violation of Title II of the ADA, a plaintiff must show that (1)[he] is a

25  qualified individual with a disability; (2)[he] was excluded from participation in or otherwise

26  discriminated against with regard to a public entity's services, programs, or activities; and (3) such

27  exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052. "To

28  establish a violation of § 504 of the RA, a plaintiff must show that (1)[he] is handicapped within the

1  meaning of the RA; (2)[he] is otherwise qualified for the benefit or services sought; (3)[he] was

2  denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the

3  benefit or services receives federal financial assistance." Id.

4         Plaintiff alleges that the defendants failed to provide him adequate hemodialysis, surgery and

5  medical care.  Plaintiff thus alleges that he failed to receive medical treatment because of his

6  disabilities.  Courts have found that the ADA and § 504 of the RA do not create a federal cause of

7  action for prisoners challenging the medical treatment provided for their underlying disabilities. See,

8  e.g., Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir.2005) (medical treatment decisions not a basis

9  for RA or ADA claims); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir.2005

10  (RA not intended to apply to medical treatment decisions); Fitzgerald v. Corr. Corp. of Am., 403

11  F.3d 1134, 1144 (10th Cir.2005) (medical decisions not ordinarily within scope of ADA or RA);

12  Grzan v. Charter Hosp. Of Northwest Indiana, 104 F.3d 116, 121-22 (7th Cir.1997). Plaintiff's

13  allegations concern his medical treatment, not discrimination because of any disability. Plaintiff's

14  claims are properly raised under the Eighth Amendment, not the ADA or RA. Plaintiff thus fails to

15  state a cognizable claim under the ADA or § 504 of the RA.

16  **IV.    Conclusion And Order**

17         Plaintiff fails to state any cognizable claims against the named defendants.  The Court will

18  provide Plaintiff with an opportunity to file a first amended complaint curing the deficiencies

19  identified by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

20  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended

21  complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

22         If Plaintiff decides to amend, Plaintiff's amended complaint should be brief, Fed. R. Civ. P.

23  8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's

24  constitutional or other federal rights.  Iqbal, 129 S. Ct. at 1949.   Although accepted as true, the

25  "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."

26  Twombly, 550 U.S. at 555.

27         With regard to the medical doe defendants, Plaintiff is advised that "as a general rule, the use

28  of 'John Doe' to identify a defendant is not favored."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th

9

1 | Cir. 1980). John Doe or Jane Doe defendants cannot be served by the United States Marshal until

2 | Plaintiff has identified them as actual individuals and amended his complaint to substitute names for

3 | John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate

4 | defendants. Unsuccessful service may result in dismissal of defendants from the action.

5 |       Finally, Plaintiff is advised that an amended complaint supersedes the original complaint,

6 | Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

7 | (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded

8 | pleading," L. R. 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint

9 | which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to

10 | London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at

11 | 1474.

12 |       Accordingly, based on the foregoing, it is HEREBY ORDERED that:

13 |      1.    The Clerk's Office shall send Plaintiff a complaint form;

14 |      2.    Plaintiff's complaint is dismissed for failure to state a claim, with leave to file a first

15 |           amended complaint within **thirty (30) days** from the date of service of this order; and

16 |      3.    If Plaintiff fails to comply with this order, the Court will dismiss this action for

17 |           failure to obey a court order and failure to state a claim.

18 |    IT IS SO ORDERED.

19 | **Dated:**   **November 29, 2011**        /s/ **Dennis L. Beck**
                                  UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28